IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

JANE DOE,
**Individually and as Class Representative**
**of All Others Similarly Situated,**

        **Plaintiffs,**

v.                No. 2:13-cv-03002-JTF-cgc

**CITY OF MEMPHIS,**

         **Defendant.**

**ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANT'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL**

  Before the Court is Defendant City of Memphis's ("City") Motion to Disqualify Plaintiff's Counsel, Robert L. J. Spence, and his law firm, The Spence Law Firm, PLLC. (Docket Entry "D.E." #39). The instant motion was filed on October 1, 2014 pursuant to Rules 1.7, 1.9, and 1.11 of the Tennessee Rules of Professional Conduct. The instant motion was referred to the Magistrate Judge for determination. (D.E. #45). For the reasons set forth herein, Defendant's Motion to Disqualify Plaintiff's Counsel is hereby GRANTED IN PART as to Mr. Spence and DENIED IN PART as to The Spence Law Firm.

**I. Introduction**

  On December 20, 2013, Plaintiffs filed a Class Action Complaint ("Complaint"), which was subsequently amended three times, against Defendant City of Memphis containing claims under federal and state law regarding its alleged failure to submit sexual assault kits of female victims for

appropriate testing, thereby causing spoliation of the evidence. (D.E. #1, #11, #31, #37).[1] On December 10, 2014, the District Court entered an Order Granting in Part and Denying in Part Defendant's Motion to Dismiss ("Order of Partial Dismissal"). (D.E. #44). The District Court's Order of Partial Dismissal dismissed all claims with the exception of Plaintiffs' Equal Protection claim for sex discrimination pursuant to 42 U.S.C. § 1983. ("Section 1983").

The instant motion argues that one of Plaintiff's attorneys, Robert L. J. Spence ("Mr. Spence"), and his law firm, The Spence Law Firm, PLLC, should be disqualified from representing Plaintiffs due to Mr. Spence's service as City Attorney for the City of Memphis from 1997 until 2004. The City argues that Mr. Spence acquired confidential information about it that would be highly relevant to the claims of systematic wrongs alleged by Plaintiffs. The City further argues that Plaintiffs' allegations call Mr. Spence's own conduct directly into question, as he was one of the "persons with final policymaking authority with the City of Memphis." (Third Am. Compl. ¶ 137). Plaintiffs respond that Mr. Spence's former representation of the City of Memphis does not violate the Tennessee Rules of Professional Conduct. Plaintiffs further rely upon Mr. Spence's Affidavit filed in support of their Response for their position that he should not be disqualified as counsel.

**II. Analysis**

The question of whether Mr. Spence's representation complies with the Tennessee Rules of Professional Conduct begins with a consideration of the nature of the cause of action alleged by Plaintiffs. The sole remaining claim against the City is for sex discrimination pursuant to Section 1983. Section 1983 provides, in relevant part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage

---

[1] The second and third filings of amended complaints are both titled "Second Amended Complaint"; however, for purposes of clarity, the Court will refer to the latter as the "Third Amended Complaint."

> of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Plaintiffs who seek to impose liability on local governments under Section 1983 must prove that "action pursuant to official municipal policy" caused their injury. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.*

With respect to the disqualification of counsel, "[a]lthough a district court possesses inherent authority to disqualify an attorney to aid in the fair administration of justice," it is a "very sensitive inquiry" and a remedy that should not be used "lightly." *Crystal D. Barker v. Professional Educators of Tennessee*, No. 3:12-cv-0044, 2012 WL 1900920, at *3 (M.D. Tenn. May 23, 2012) (citing *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988); *Cavender v. U.S. Express Enters., Inc.*, 191 F. Supp. 2d 962, 965 (E.D. Tenn. 2002)). "[C]ourts must remain sensitive to the parties' choice of counsel and weigh that interest against the public's interest in a fair judicial process." *Id.* To accomplish this goal, courts must "exercise judgment with an eye toward upholding the highest ethical standards of the profession, protecting the interests of the litigants in being represented by the attorney of their choosing, protecting the loyalty and confidences a prior client may have placed in a law firm or attorney, and the overriding societal interests in the integrity of the judicial process." *Cavender*, 191 F. Supp. 2d at 965.

The Sixth Circuit has articulated a three-part test for determining whether disqualification based on a conflict of interest is warranted: (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of

those relationships was/is substantially related; and, (3) the attorney acquired confidential information from the party seeking disqualification. *In re Valley-Vulcan Mold Co.*, 5 Fed. Appx. 396, 401 (6th Cir. 2001) (citing *Dana Corp. v. Blue Cross & Blue Shield Mut.*, 900 F.2d 882, 889 (6th Cir. 1990)). Further, in analyzing motions to disqualify counsel for conflicts of interest with former clients, the court looks to the Tennessee Rules of Professional Conduct for guidance. *Nat'l Union Fire Ins. Co. v. Alticor, Inc.*, 466 F.3d 456, 457-58 (6th Cir. 2006), *vacated in part on other grounds,* 472 F.3d 436 (6th Cir. 2007).

Rule 1.11(a) of the Tennessee Rules of Professional Conduct addresses the special conflicts of interest for former government officers and employees and provides, in pertinent part, as follows:

> (a) Except as law may otherwise expressly permit, a lawyer who has formerly served as a public officer or employee of the government:
>
> (1) is subject to RPC 1.9(c); and
>
> (2) shall not otherwise represent a client in connection with a matter in which the lawyer participated personally and substantially as a public officer or employee, unless the appropriate government agency gives its informed consent, in writing, to the representation.

Tenn. Sup. Ct. R. 8, RPC 1.11(a).

Rule 1.9(c) of the Tennessee Rules of Professional Conduct addresses an attorney's general duties to a former client and provides as follows:

> (c) A lawyer who has formerly represented a client in a matter . . . shall not thereafter reveal information relating to the representation or use such information to the disadvantage of the former client unless (1) the former client gives informed consent, confirmed in writing, or (2) these Rules would permit or require the lawyer to do so with respect to a client, or (3) the information has become generally known.

Tenn. Sup. Ct. R. 8, RPC 1.9(c).[2]

---

[2] Comment 1 to Rule 1.9 of the Tennessee Rules of Professional Conduct further clarifies that "former government lawyers must comply with this Rule only to the extent required by RPC 1.11." Tenn. Sup. Ct. R. 8, RPC 1.9, cmt. 1.

Comment 4 to Rule 1.11 provides its rationale as follows:

> This Rule represents a balancing of interests. On the one hand, where the successive clients are a government agency and a private client, the risk exists that power or discretion vested in that agency might be used for the special benefit of a private client. A lawyer should not be in a position where benefit to a private client might affect performance of the lawyer's professional functions on behalf of the government. Also, unfair advantage could accrue to the private client by reason of access to confidential government information about the client's adversary obtainable only through the lawyer's government service. On the other hand, the rules governing lawyers should not be so restrictive as to inhibit transfer of employment to and from the government. The government has a legitimate need to attract qualified lawyers as well as to maintain high ethical standards. Thus, a former government lawyer is disqualified only from particular matters in which the lawyer participated personally and substantially.

Tenn. Sup. Ct. R. 8, RPC 1.11, cmt. 4.

Comment 2 to Rule 1.9 circumscribes the scope of a matter as follows:

> The scope of a "matter" for purposes of this Rule depends on the facts of a particular situation or transaction. The appropriateness of the subsequent representation will depend on the scope of the representation in the former matter, the scope of the proposed representation in the current matter, and its relationship to the former matter. The lawyer's involvement in a matter can also be a question of degree. . . . [A] lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type, even though the subsequent representation involves a position adverse to the prior client. . . . The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

Tenn. Sup. Ct. R. 8, RPC 1.9, cmt. 2.

Comment 3(c) provides guidance on whether an attorney may be disqualified due to general knowledge:

> In the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation. For example, a lawyer might . . . have learned a former client's preferred approach to bargaining in settlement discussions or negotiating business points in a transaction, willingness or unwillingness to be deposed by an adversary, or financial ability to withstand extended litigation or contract negotiations. Only when such information will be

> directly in issue or of unusual value in the subsequent matter will it be independently relevant in assessing a substantial relationship.

Tenn. Sup. Ct. R. 8, RPC 1.9, cmt. 3(c).

Comment 3(d) addresses the precarious position of the former client with respect to its desire to both protect its confidences and seek disqualification of counsel:

> Inquiries concerning the existence, exchange, and potential for use of such confidential information may themselves raise concerns and difficulties. A concern to protect a former client's confidential information would be self-defeating if, in order to obtain its protection, the former client were required to reveal in a public proceeding the particular communication that could be used in the subsequent representation. On the other hand, closed or in camera proceedings may implicate issues of fairness to other parties. Further, the interests of subsequent clients also militate against extensive inquiry into the precise nature of the lawyer's representation of the subsequent client and the nature of exchanges between them.

Tenn. Sup. Ct. R. 8, RPC 1.9, cmt. 3(d).

In the instant case, it is undisputed that Mr. Spence formerly served as the City Attorney from 1997 until 2004. It is undisputed that the claims contained in Plaintiff's Third Amended Complaint are based on events "continuously" occurring "[for at least the last twenty-five (25) years and up to the present time." (Third Am. Compl. ¶ 95). It is also undisputed that Mr. Spence now represents Plaintiffs. Thus, the primary issue for resolution under Rule 1.11(a) is whether Mr. Spence "participated personally and substantially as a public officer" in connection with this matter.

In support of its contention that Mr. Spence should be disqualified, the City asserts that Mr. Spence "gained extensive general knowledge of the City's policies, procedures, mission, and operations, as well as specific knowledge concerning issues that are directly relevant to Plaintiff's claims." (Mot. to Disqualify at 6). The City asserts that, while Mr. Spence served as City Attorney, "he was not only privy to, but also an *essential participant* in discussions involving the City's and MPD's policies and procedures." (*Id*. at 8) (emphasis in original). The City asserts that Mr. Spence not only advised the City on its litigation strategy and gained familiarity with its methods and

preferences, but further personally coordinated and implemented its defense. (*Id.*)

Thus, according to the City, "[b]y the very nature of Mr. Spence's position with the City, he was personally and substantially involved in making decisions for the [former Mayor's] administration and advising other top City officials as to the legal consequences of the policies they were instituting." (*Id.*) The City states that Mr. Spence "would have been present for confidential internal discussions on issues highly relevant to this matter." (*Id.*) The City further argues that Plaintiff's Third Amended Complaint "essentially concedes" that Mr. Spence has direct, personal knowledge regarding the facts currently at issue because they have alleged that "persons with final policymaking authority for the City of Memphis"—a group that included Mr. Spence for seven years of the relevant time period—"knew about the herein described conduct and facilitated it, approved it, condoned it and/or turned a blind eye to it." (Third Am. Compl. ¶¶ 137-38). The City further states that, "[b]ecause these claims can either be substantiated or disproved by the personal knowledge Mr. Spence gained through his service as City Attorney, he is also likely to be one of the prime witnesses to be deposed in this litigation." (Mot. to Disqualify at 9).

In their Response, Plaintiff's rely upon the Affidavit of Mr. Spence, which sets forth in great detail his involvement or lack thereof in various matters during his tenure as City Attorney. In sum, Mr. Spence's Affidavit sets forth as follows:

- During his tenure as City Attorney, at no time did any issues pertaining to the Memphis Police Department's ("MPD") treatment of Sexual Assault Evidence Kits arise from which he obtained any knowledge or confidential information relevant to the issues presented in this lawsuit. (Spence Aff. ¶ 3).

- At no time during his tenure as City Attorney was Mr. Spence ever made aware that the MPD had any particular policies pertaining to the testing of Sexual Assault Evidence Kits. (Spence Aff. ¶ 4).

- The issue of testing Sexual Assault Evidence Kits was never discussed or made known to Mr. Spence in any context whatsoever while he served as

City Attorney. (Spence Aff. ¶ 5).

- Mr. Spence never received any confidential information, or participated personally and substantially, in the MPD's policies pertaining to criminal investigations. (Spence Aff. ¶ 6).

- Mr. Spence was never asked to prepare any legal opinion, and has absolutely no knowledge of any such legal opinion or request therefore pertaining to any of the issues presented in this lawsuit. (Spence Aff. ¶ 7).

- Mr. Spence did not participate personally and substantially in any lawsuit or matter pertaining to the MPD's failure to properly investigate any crimes, including sexual assault. (Spence Aff. ¶ 8).

- Mr. Spence never participated personally and substantially in any matters whatsoever pertaining to the MPD's treatment of evidence or crime investigation. (Spence Aff. ¶ 9).

- Mr. Spence never defended the City in any legal matters pertaining to the MPD's policies pertaining to any matters relevant to this lawsuit. (Spence Aff. ¶ 10).

- Mr. Spence never provided any legal advice on any issues relating or pertaining to any matters relevant to this lawsuit. (Spence Aff. ¶ 11).

- Mr. Spence never obtained any confidential information that will provide him with any advantage in this litigation. (Spence Aff. ¶ 12).

- Mr. Spence never received any information, confidential or otherwise, during his tenure as City Attorney that any backlog of untested Sexual Assault Evidence Kits existed. (Spence Aff. ¶ 13).

- Mr. Spence learned of the backlog of untested Sexual Assault Evidence Kits ten years after his service as City Attorney ended and in the same manner as the general public—through the media's reporting of the story. (Spence Aff. ¶ 14).

- Since Mr. Spence's tenure as City Attorney ended, the City's administration has changed several times such that he no longer has any confidential information whatsoever as to the City's current policies and procedures with respect to personnel and/or employment matters. (Spence Aff. ¶ 15).

- Mr. Spence has no confidential information as to the City's general litigation strategies, or the City's approach to pursuing litigation, including its risk tolerance, its resources, its method of conducting settlement negotiation, or any other preferences it may possess in conducting litigation. (Spence Aff.

¶ 16).

- The City budgets passed while Mr. Spence served as City Attorney, to the extent that they become relevant in this litigation, are public information. (Spence Aff. ¶ 17).

- As City Attorney, Mr. Spence never provided any legal advice as to the City's budget. (Spence Aff. ¶ 18).

- Mr. Spence was not personally and substantially involved in discussions regarding the MPD's budget. (Spence Aff. ¶ 19).

- Mr. Spence was not involved in any manner whatsoever in discussions regarding the MPD's budget. (Spence Aff. ¶ 20).

- Mr. Spence was not personally and substantially involved in the City's oversight of MPD in any manner relevant to this lawsuit. (Spence Aff. ¶ 21).

- Mr. Spence was not personally and substantially involved in determining how best to advise, train, and supervise MPD and its officers. (Spence Aff. ¶ 22).

- Mr. Spence had no involvement and never received confidential information pertaining to how best to advise, train, and supervise MPD and its officers. (Spence Aff. ¶ 23).

- Mr. Spence has no confidential information on an unwritten, unconstitutional policy or custom of the City pertaining to these Sexual Assault Evidence Kits or any other matter relevant to this lawsuit. (Spence Aff. ¶ 24).

- Mr. Spence has not represented the City for approximately a decade, during which time the City's administration, the City Council, and the director of the MPD have undergone significant changes. (Spence Aff. ¶ 25).

- Mr. Spence never served as City Attorney under the current mayor or during the tenure of the current police director. (Spence Aff. ¶ 26).

- Mr. Spence believes there is no factual basis or legal relationship, and not one item of confidential information, in common between the matters in which he was involved in a decade ago as the City Attorney and this case. (Spence Aff. ¶ 27).

While the Court does not make this decision lightly, it concludes that Mr. Spence should be disqualified pursuant to Rule 1.11 due to his personal and substantial involvement as a public officer

for the City in policymaking and leadership roles. The Court reaches this conclusion because of the nature of Plaintiff's Third Amended Complaint against "persons with final policymaking authority for the City of Memphis" and the nature of Mr. Spence's role as the City's former chief legal officer with such authority. Despite Mr. Spence's extensive affidavit setting forth specific information to which he was not privy, which the Court finds to be very compelling in his favor, Comment 2 to Rule 1.9 makes clear that "the appropriateness of the subsequent representation will depend on *the scope of the representation in the former matter*, the scope of the proposed representation, and its relationship to the former matter." Tenn. Sup. Ct. R. 8, RPC 1.9, cmt. 2 (emphasis added). The scope of Mr. Spence's role as City Attorney was exceptionally broad, and its relationship to the former matter is closely intertwined because of his role in policymaking and leadership—both of which are at issue in Plaintiff's case. Thus, simply because Mr. Spence did not have specific knowledge of the failure to test the Sexual Assault Evidence Kits or was not involved in other ways with this issue does not suffice to permit him to represent Plaintiffs when he previously had such a broad policymaking and leadership role with the City.

Further, the Court finds that this conclusion is not altered by the strong but ultimately unavailing arguments made by Plaintiffs. First, Plaintiffs argue that Mr. Spence's comprehensive affidavit must outweigh the lack of evidence presented by the City, which did not file any affidavits in support of its motion. However, Comment 3(d) to Rule 1.9 makes clear that the City is not required to disclose its confidences to successfully obtain disqualification. Further. as Comment 3e to Rule 1.9 makes clear, the Rule "attempts to avoid requiring actual disclosure of confidential information by focusing upon the general features of the matters involved and inferences as to the likelihood that confidences were imparted by the former client that could be used to adverse effect in the subsequent representation. Thus, a former client is not required to reveal the confidential

information learned by the lawyer in order to" disqualify counsel. Tenn. Sup. Ct. R. 8, RPC 1.9, cmt. 3(e). The Court, instead, may consider "the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services." *Id*. The City's Motion articulates the type of general knowledge that it believes that Mr. Spence obtained in his role as City Attorney. Thus, the court finds that the City's general allegations are sufficient to support Mr. Spence's disqualification.

Plaintiffs argue that the changes in the City's administration, the City Council, and the MPD Director has resulted in Mr. Spence's prior experience being irrelevant, including as to the City's general litigation strategies, its approach to pursuing litigation, its risk tolerance, its resources, its method of conducting settlement negotiations, and any other preferences it may possess in conducting litigation. (Spence Aff. ¶¶ 15-16, 25-27); *see Barker*, 2012 WL 1900920, at *5 (reasoning that knowledge of these topics, along with the extent of a former client's insurance coverage, is grounds for disqualifying counsel pursuant to Rule 1.9). Yet Mr. Spence does not deny that he was personally and substantially involved in these topics during his tenure as City Attorney. As Comment 3(c) to Rule 1.9 makes clear, knowledge of these topics should disqualify an attorney if such topics will be directly in issue in the subsequent representation, and the Court finds that such is the case. Plaintiffs further appear to argue that such prior knowledge must be of little or no value to them during the present litigation as it is dated. While it is true that "[i]nformation acquired in a prior representation may have been rendered obsolete by the passage of time," there is no evidence that the City has altered these general strategies or preferences with changes in the administration and City leadership, and Mr. Spence possesses far great insight into these than an attorney who has not previously served as City Attorney.

Plaintiffs additionally assert that disqualification of Mr. Spence would deprive them of their

counsel of choice. While it would deprive them of representation by Mr. Spence, Plaintiffs have also been represented since, at the latest, February 6, 2014 by Ricky E. Wilkins and Sharon Harless Loy of the Law Office of Ricky E. Wilkins. Additionally, for reasons set forth below, Rule 1.11(b) does not deprive Plaintiff of the services of The Spence Law Firm. Plaintiffs have been represented by Mr. Bryan Meredith of The Spence Law Firm since at least August 15, 2014[3] and have recently also been represented by Mr. Emmett Lee Whitwell of the Spence Law Firm. Thus, Plaintiffs maintain the benefit of having three attorneys who have represented them since the earliest stages of their case and a fourth attorney that practices with The Spence Law Firm.

Plaintiffs further argue that the City has been aware of his prior service as City Attorney for over ten months before the filing of the instant motion but never sought disqualification. Plaintiffs claim that this delay makes clear that the instant motion was brought for improper strategic purposes. Plaintiffs likewise argue that Mr. Spence has previously and is currently representing other parties directly adverse to the City, including in *Lakendus Cole v. City of Memphis*, No. 2:13-cv-02117, JPM-dkv, a Section 1983 action where the policies and procedures of the City are at issue. Plaintiffs state that the City filed the instant motion only two days after the *Cole* class action was certified, which they claim "perhaps provides an explanation for the strategy behind the City's Motion." (Mot. to Disqualify at 4 & n.6).

The Sixth Circuit has noted that "[c]ourts have disallowed disqualification on the basis of waiver or estoppel where the moving party has failed to move for disqualification in a timely manner." *In re Valley-Vulcan*, 5 Fed. Appx. at 401. The Sixth Circuit further stated that "'[i]t is well settled that a former client who is entitled to object to an attorney representing an opposing

---

[3] Mr. Meredith represented Plaintiffs at an August 15, 2014 hearing in the instant case, although he did not formerly file his Notice of Appearance with the Court until September 12, 2014.

party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." *Id.* (citing *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983)). "Waiver is a valid basis for the denial of a motion to disqualify" under the following:

> [A] finding [of waiver] is justified . . . when a former client was concededly aware of the former attorney's representation of an adversary but failed to raise an objection promptly when he had an opportunity. In [this] circumstances, the person whose confidences and secrets are at risk of disclosure or misuse is held to have waived his right to protection from that risk.
>
> In determining whether the moving party has waived its right to object to the opposing party's counsel, consideration must be given to (1) the length of the delay in bringing the motion to disqualify, (2) when the movant learned of the conflict, (3) whether the movant was represented by counsel during the delay, (4) why the delay occurred and (5) whether disqualification would result in prejudice to the non-moving party. In particular, consideration should be given and inquiry made as to whether the motion was delayed for tactical reasons.

*In re Valley-Vulcan Mold Co.*, 237 B.R. 322, 337-38 (B.A.P. 6th Cir. 1999), *subsequently aff'd*, 5 Fed. Appx. 396 (6th Cir. 2001) (quoting *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1115 (D.N.J. 1993)).

In this case, the ten-month length of the delay is significant, but the instant motion was not filed on the eve of trial as was the circumstance considered by the *In re Valley-Vulcan* court. The City would certainly have known of the alleged conflict from the date of the filing of the Complaint, and the City has been represented by counsel during the entire pendency of this case. The City has also failed to articulate any reason for the delay. Plaintiffs argue that the delay must have been for tactical reasons either in this case or in relation to another case Mr. Spence is pursuing against the City. Yet, ultimately, while it certainly would have been most prudent to have immediately raised this issue, the Court does not find that the delay is so substantial as to warrant waiver. The Court also does not find that significant prejudice will result to the non-moving party as it will continue

to have the representation of Mr. Wilkins and Ms. Loy of The Law Office of Ricky E. Wilkins and, for reasons set forth below, the representation of Mr. Meredith and Mr. Whitwell.

Further, Plaintiffs cite no law for the proposition that the City's determination not to file motions to disqualify in other cases should be considered in the determination of this motion, and it appears to the Court that this is not a factor other than when considered on the issue of whether the instant motion could have been brought for improper tactical reasons. *See, e.g. Kitchen v. Aristech Chemical*, 769 F. Supp. 254, 256-57 (S.D. Ohio 1991) ("While the Sixth Circuit has approved disqualification of attorneys, it appears to have done so only in cases where a conflict of interest existed.") (citing cases). Thus, in light of the foregoing, the Court concludes that, due to Mr. Spence's policymaking and leadership role as City Attorney during the time period relevant to Plaintiffs' claims, it is appropriate pursuant to Rule 1.11 of the Tennessee Rules of Professional Conduct to disqualify Mr. Spence as counsel for Plaintiffs.[4]

The City also moves for disqualification of The Spence Law Firm, PLLC. Rule 1.11(b) provides the method for a law firm to continue representing a client when one lawyer is disqualified. It states that the law firm must do as follows to properly continue the representation:

(1) ascertain that the personally disqualified lawyer is prohibited from participating in the representation of the current client; and

(2) determine that no lawyer representing the client has acquired any material confidential government information relating to the matter; and

---

[4] In addition to the Court's conclusion that Mr. Spence must be disqualified pursuant to Rule 1.9, the City has argued that Mr. Spence may be "one of the prime witnesses to be deposed in this litigation." It follows that the City may believe that Mr. Spence could also be a potential witness at the trial of this case. Rule 3.7(a) of the Tennessee Rules of Professional Conduct provides that "[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness." Tenn. Sup. Ct. R. 8, RPC 3.7(a). Because the Court has already concluded that Mr. Spence should be disqualified pursuant to Rule 1.9(a), it need not resolve the issue of whether he should likewise be disqualified under Rule 3.7(a).

(3) promptly implement screening procedures to effectively prevent the flow of information about the matter between the personally disqualified lawyer and other lawyers in the firm; and

(4) advise the government agency in writing of the circumstance the warranted the utilization of the screening procedures required by this Rule and the actions that have been taken to comply with this Rule.

Tenn. Sup. Ct. R. 8, RPC 1.11(b). Thus, The Spence Law Firm will be permitted to represent Plaintiffs unless it is unable to comply with Rule 1.11(b).

### III. Conclusion

For the reasons set forth herein, Defendant's Motion to Disqualify Plaintiff's Counsel (D.E. #39) is hereby GRANTED IN PART as to Mr. Spence and DENIED IN PART as to The Spence Law Firm.

**IT IS SO ORDERED** this 5th day of January, 2015.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE